IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHERIE DIANE TEDDER, | ) | CIVIL NO. 11-00083 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY as TRUSTEE of the | ) | |
| RESIDENTIAL ASSET | ) | |
| SECURITIZATION TRUST 2007-A8, | ) | |
| MORTGAGE PASS-THROUGH | ) | |
| CERTIFICATES, SERIES 2007-H, | ) | |
| UNDER THE POOLING AND | ) | |
| SERVICING AGREEMENT DATED | ) | |
| JUNE 1, 2007; and ONE WEST | ) | |
| BANK, FSB dba INDYMAC | ) | |
| MORTGAGE SERVICES,, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Before the Court is Defendants Deutsche Bank National
Trust Company, as Trustee ("Deutsche Bank") and OneWest Bank,
FSB's ("OneWest," collectively "Defendants") Motion to Dismiss
First Amended Complaint ("Motion"), filed December 9, 2011.
Plaintiff Cherie Diane Tedder ("Plaintiff" or "Tedder") filed her
memorandum in opposition on February 17, 2012, and Defendants
filed their reply on February 27, 2012.  This matter came on for
hearing on March 12, 2012.  Appearing on behalf of Defendants was
Charles Prather, Esq., and appearing on behalf of Plaintiff was
John Harris Paer, Esq.  After careful consideration of the

Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## **BACKGROUND**

Plaintiff alleges that on May 24, 2007, she entered into a loan transaction with non-party Loan Network, LLC to refinance her first mortgage on her property located at 7762 Kalohelani Place, Honolulu, Hawaiʻi ("the Property"). [First Amended Complaint at ¶ 10; Exh. A (5/22/07 Loan Network, LLC Disclosure Statement).] According to Plaintiff, she received copies of some, but not all, loan documents at closing, including the Truth in Lending Act ("TILA") Disclosure Statement, the Notice of Right to Cancel, and the HUD-1 Final Settlement Statement. [Id. at ¶ 12.[1]] She states that Deutsche Bank is the present holder of the mortgage and note on the Property related to this transaction, and that OneWest (doing business as IndyMac Mortgage Services ("IndyMac")) is servicing the loan and collecting payments on behalf of Deutsche Bank. Plaintiff states that Defendants acquired the loan and servicing rights after the loan was already in default. [Id. at ¶¶ 13, 16.]

She alleges that, beginning in July 2009, she sought

---

[1] The TILA Disclosure Statement is attached to the First Amended Complaint as Exhibit A, the Notice of Right to Cancel is attached as Exhibit B, and the HUD-1 Final Settlement Statement is attached as Exhibit C.

loan modification of her first mortgage through IndyMac, and on March 23, 2010, rescinded the loan by letter and sought new terms. IndyMac informed her in an October 18, 2010 letter that her loan modification was denied because she failed to submit requested documentation. Plaintiff, however, alleges that she timely submitted all requested documentation. IndyMac requested that she resubmit the entire loan modification packet, which Plaintiff says she did. Plaintiff's counsel sent a qualified written request to IndyMac on November 22, 2010, and, on December 14, 2010, IndyMac approved a Forbearance Agreement, and Plaintiff signed and returned the required paperwork. Plaintiff states that she has made all payments required by the Forbearance Agreement. [Id. at ¶¶ 17-27.]

Sometime in December 2010, Plaintiff received notice that the Property would be sold pursuant to a non-judicial foreclosure sale. Plaintiff's counsel contacted Deutsche Bank's counsel during December 2010 and January 2011 to confirm that the foreclosure auction would be cancelled. On February 17, 2011, the Court granted Plaintiff's Motion for Temporary Restraining Order, and the parties subsequently agreed to an injunction to be in effect for the duration of the matter, under which Defendants would not proceed with any foreclosure actions. [Id. at ¶¶ 28-42.]

Plaintiff claims that Defendants continued to threaten that the foreclosure sale will go forward, while she continued to make all required payments and seek loan modification. On November 2, 2011, Defendants' counsel notified Plaintiff's counsel that the modification request had been denied. [Id. at ¶¶ 45-49.]

Plaintiff filed her First Amended Complaint against Defendants on November 15, 2011, alleging the following ten causes of action: (1) violation of Haw. Rev. Stat. Chapter 480 (Count I); (2) breach of fiduciary duty (Count II); (3) fraud and misrepresentation (Count III); (4) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c-g (Count IV); (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count V); (6) violation TILA, 15 U.S.C. §§ 1635-40 (Count VI); (7) negligence (Count VII); (8) breach of contract (Count VIII); (9) breach of duty of good faith and fair dealing (Count IX), and; (10) promissory estoppel (Count X).

I.  **Defendants' Motion**

Defendants ask the Court to dismiss the First Amended Complaint because Plaintiff fails to state a claim and fails to plead her fraud claims with particularity. They assert that this action is solely aimed at stalling foreclosure of the Property and forcing a loan modification. [Mem. in Supp. of Motion at 2.]

**A.   Count I - Haw. Rev. Stat. Chapter 480**

Plaintiff alleges that Defendants committed unfair and deceptive acts or practices ("UDAP") by violating various TILA provisions.  Defendants argue that this claim cannot stand because TILA preempts Haw. Rev. Stat. § 480-2 based on alleged TILA violations.  [Id. at 4 (citing Enriquez v. Countrywide Home Loans, FSB, CIV. 10-00405 LEK, 2011 WL 3861402 (D. Hawai'i Aug. 31, 2011)).]

Second, Defendants argue that its failure to modify Plaintiff's loan does not state a UDAP claim.  [Id. (citing cases).]  Third, Defendants assert that Plaintiff cannot state a private right of action arising out of the Home Affordable Modification Program ("HAMP").  [Id. at 4-5 (citing Lucia v. Wells Fargo Bank, N.A., 2011 WL 3134422, at *5 (N.D. Cal. Apr. 22, 2011)).]

**B.   Count II - Breach of Fiduciary Duty**

Defendants argue that this count must be dismissed because Defendants did not owe Plaintiff a fiduciary duty as her lender, and Plaintiff has not demonstrated anything more than an "arms-length business relationship" existed between herself and Defendants.  [Id. at 5-6.]

**C.   Count III - Fraud and Misrepresentation**

First, Defendants argue that Plaintiff's fraud and misrepresentation claim is based on future events – promises of a

potential loan modification at some point in the future – and
that there is no indication that there was any intent on the part
of Defendants not to fulfill any alleged promises regarding loan
modification. [Id. at 6.]

Second, Defendants argue that Plaintiff failed to
demonstrate that her fraud claims are plausible because she
cannot satisfy the "who, what, when, where and how" test or at
least "plead enough facts to raise a reasonable expectation that
discovery would reveal evidence of such a misrepresentation."
[Id. at 7.]

Finally, Defendants argue that Plaintiff has not shown
that she relied on any of the alleged representations to her
detriment. Defendants have not foreclosed on the Property and
Plaintiff is still in possession. [Id.]

D. **Count IV - FDCPA**

As to Plaintiff's FDCPA claim, Defendant argues that
activities undertaken in connection with a non-judicial
foreclosure do not fall under the purview of the FDCPA, and that
this claim should be dismissed with prejudice. [Id. at 7-8
(citing Long v. Deutsche Bank Nat. Trust Co., 2011 WL 5079586, at
*4 (D. Hawai'i Oct. 24, 2011)).]

E. **Count V - RESPA**

Plaintiff claims that Defendants failed to respond to
her attorney's Qualified Written Request ("QWR") and therefore

6

violated RESPA.  Defendants note that Plaintiff does not cite a specific provision within RESPA, so they are left to assume that Plaintiff is alleging a violation of 12 U.S.C. § 2605(e)(2), which fails here, because of Plaintiff's failure to allege damages.  Defendants argue that Plaintiff must demonstrate how she has been damaged, and her failure to plead damages with regard to her RESPA claim warrants dismissal with prejudice. [Id. at 9.]

     **F.**   **Count VI - TILA**

Plaintiff alleges that Defendants violated TILA by failing to disclose or improperly disclosing certain terms regarding the note and mortgage.  Defendants argue that Plaintiff's damages claims are barred by the applicable statute of limitations because the loan transaction occurred in May of 2007, and Plaintiff should have filed any and all claims pertaining to the disclosure made at the time of the loan closing within a year of closing pursuant to  15 U.S.C. § 1640(e).  To the extent Plaintiff seeks rescission, such a claim is time-barred as well because it was not brought within three years pursuant to 15 U.S.C. § 1635(f).  [Id. at 9.]

     **G.**   **Count VII - Negligence**

Defendants assert that Plaintiff's negligence claims appear to relate to both the loan origination and loan modification process.  With respect to loan origination, they

argue that she fails to state a claim because lenders do not owe borrowers a duty of care sounding in negligence.  [Id. at 9-10 (citing Caraang v. PNC Mortg., 2011 WL 2470637, at *23 (D. Hawawi'i 2011)).]  To the extent her claims relate to loan modification, Defendants argue they should be dismissed because no private right of action exists under HAMP.  [Id. at 10.]

   **H.   Count VIII - Breach of Contract**

   Defendants note that Plaintiff alleges that they breached two separate agreements, but does not identify them specifically in the First Amended Complaint.  They argue that Plaintiff must cite the contractual provisions allegedly violated, and cannot make generalized allegations of a contractual breach.  To the extent Plaintiff claims that Defendants breached the terms of the Forbearance Agreement, they argue that the recording of a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice") occurred on December 8, 2010, well in advance of Plaintiff's execution of the Forbearance Agreement, and therefore, there was no breach of such that agreement.  [Id. at 10-11.]

   Further, Defendants assert that the e-mails attached to Plaintiff's First Amended Complaint make it clear that Defendants did suspend any foreclosure efforts after receiving the signed Forbearance Agreement.  Counsel for the foreclosing entity, Derek Wong, Esq., makes it clear in his January 19, 2011

8

e-mail that Plaintiff's "file is currently on a Forbearance (FB) hold." [Id. at 11 (citing First Amended Complaint, Exh. I at 1).] They argue that Plaintiff has not alleged that Defendants made any other efforts during the period described in the Forbearance

Agreement to foreclose on the Property. [Id.]

### I. **Count IX - Good Faith and Fair Dealing**

Defendants ask the Court to dismiss this claim with prejudice, as it has been addressed by numerous courts within this district. Defendants argue they have not violated any duty because none exists. [Id.]

### J. **Count X - Promissory Estoppel**

Last, Defendants argue that Plaintiff's promissory estoppel claim fails because it does not indicate any detrimental reliance on any alleged promises made by Defendants. [Id. at 12 (citing Hele Ku KB, LLC v. BAC Home Loans Servicing, LP, 2011 WL 5239744, at *14 (D. Hawai'i Oct. 31, 2011)).]

## II. **Plaintiff's Memorandum in Opposition**

Plaintiff argues in her memorandum in opposition that the Motion should be denied because she has sufficiently stated claims for relief, but that, if the Court is inclined to grant the Motion, Plaintiff requests that she be allowed to amend her First Amended Complaint accordingly.

**A.  Count I - Haw. Rev. Stat. Chapter 480**

Plaintiff argues that Defendants made representations that Plaintiff would get a permanent loan modification and that they did not intend to foreclose, which amounted to a "bait and switch."  The bait was that Plaintiff make payments for six months under the Forbearance Agreement, which she says she did in order to get a permanent modification.  When she successfully completed the agreement, however, Defendants allegedly switched the deal and denied the modification.  Plaintiff argues that she does not argue that HAMP creates a private right of action, but that violations of HAMP regulations can be a deceptive and unfair practice under Chapter 480.  Plaintiff alleges the Defendants proceeded on the foreclosure track while evaluating Plaintiff's request for modification in violation of HAMP guidelines.  [Mem. in Opp. at 6-7.]

Plaintiff also argues that Defendants told Plaintiff there would be no foreclosure auction, while, at the same time, its attorneys were moving forward with the auction, and continued to threaten that a foreclosure sale would go through, despite the injunction in place.  She argues that this created confusion and is a UDAP.  [Id. at 7-8.]

Next, Plaintiff states that she did not get all required documents at closing, and that the failure to provide them is a UDAP.  She argues that she does not rely solely on TILA

10

for her UDAP claims, and that there are UDAP claims that are independent of her TILA claims. She states that the note, mortgage and foreclosure attempts are void under Haw. Rev. Stat. § 480-12. [Id. at 9-11.]

**B.    Count II - Breach of Fiduciary Duty**

Plaintiff argues that it is premature to dismiss her claim for breach of fiduciary duty. She acknowledges that Defendants may not ordinarily owe a borrower such a duty, but that here, once they took on her modification request and offered the Forbearance Agreement as a preliminary test for a final modification, this was no longer an arms-length transaction. She argues that Defendants changed the normal relationship by promising a permanent modification. [Id. at 11.]

**C.    Count III - Fraud and Misrepresentation**

According to Plaintiff, the fraudulent misrepresentations were that permanent modification would be available upon successful completion of the Forbearance Agreement, that Defendants were not going to foreclose, and later that modification was denied because Plaintiff had not submitted requested documentation. [Id. at 11-12.]

**D.    Count IV - FDCPA**

Plaintiff acknowledges that actions directed solely to a non-judicial foreclosure do not amount to collection of a debt, but argues that, here, there was an additional demand for money

in the form of the Forbearance Agreement.  Plaintiff argues that this amounted to a "debt" that was being collected and that the FDCPA does apply.  [Id. at 12.]

### E.  Count V - RESPA

Plaintiff argues that this count states a RESPA claim because Defendants failed to respond to the QWR and Plaintiff seeks statutory and actual damages as a result of these violations.  She argues that her damages must be proved at trial, but that they are sufficiently alleged in the First Amended Complaint.  [Id.]

### F.  Count VI - TILA

With respect to her TILA damages claim, Plaintiff argues that she sufficiently alleged that she was prevented from learning of her TILA rights by Defendants and the original lender, and therefore, her time for exercising those rights was extended.  [Id. at 13 (citing King v. California, 748 F.2d 910 (9th Cir. 1986)).]

### G.  Count VII - Negligence

Plaintiff argues that Defendants owed her "a duty to be truthful in its representations when soliciting Plaintiff's business. . . .  The bank owes everyone a duty not to make false promises.  When it does that, it does exceed the scope of its role as a mere money lender."  [Id.]  Further, Plaintiff argues that Defendants owed her a duty of ordinary care in carrying out

the loan modification review.  [Id.]

**H.    Count VIII - Breach of Contract**

Next, Plaintiff argues that her breach of contract
claim is sufficiently alleged in the First Amended Complaint.
She states that Defendants promised her that she would get a loan
modification if she complied with the Forbearance Agreement, but
then Defendants refused modification and began foreclosure
proceedings.  [Id. at 14.]

**I.    Count IX - Good Faith and Fair Dealing**

She also argues that her breach of good faith claim is
adequately pled, for the same reasons as her breach of contract
claim.  She argues that it "cannot be in good faith to lead
Plaintiff to believe that she will get a loan modification, which
later was refused despite Plaintiff's making all of her payments
timely during the trial period."  [Id.]

**J.    Count X - Promissory Estoppel**

Plaintiff argues that her promissory estoppel claim is
supported by her allegations of oral promises and the written
trial period agreement.  She argues she properly alleged that she
relied on those promises to her detriment, was justified in her
reliance, and thereafter suffered damages.  [Id. at 15.]

**III. Defendants' Reply**

In Defendants' reply, they emphasize that the Property
has not been sold and no sale is scheduled.  [Reply at 2.]  With

13

respect to Plaintiff's negligence claim (Count VII), they argue that the cases cited by Plaintiff involved properties that were sold at auction or where an auction was pending. [Id.]

Next, Defendants argue that Plaintiff has not suffered any damages as a result of the alleged RESPA violation, and that her conclusory allegation that she suffered "actual damages" is not sufficient because she did not allege how she suffered a pecuniary loss. [Id. at 3 (citing Lindsey v. Meridias Capital, Inc., CIV. 11-00653 JMS, 2012 WL 488282 (D. Hawai'i Feb. 14, 2012)).]

With respect to Plaintiff's FDCPA claim, Defendants maintain that they are not debt collectors, unless Plaintiff is admitting that she somehow defaulted under the terms of the Forbearance Agreement. Defendants note that any attempt to collect on a valid and existing forbearance plan is different than collecting on the underlying loan which was already in default. If the Forbearance Agreement was not in default, then the servicer is not trying to collect on a debt for FDCPA purposes, argue Defendants, and is not required to comply with the terms of the FDCPA based on the exception contained in 15 U.S.C. § 1692a(6)(F)(iii). [Id. at 6-7 (citing Bailey v. Sec. Nat. Servicing Corp., 154 F.3d 384, 387 (7th Cir. 1998)).]

To the extent Plaintiff seeks rescission pursuant to Haw. Rev. Stat. Chapter 480, Defendants argue that any such

14

rescission does not void the loan and that "Plaintiff is not entitled to a free house." [Id. at 7.]

## STANDARD

Fed. R. Civ. P. 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554,

15

127 S. Ct. 1955).

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc., 693
F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

This Court, however, notes that the tenet that the
court must accept as true all of the allegations contained in the
complaint - "is inapplicable to legal conclusions." Iqbal, 129
S. Ct. at 1949. Factual allegations that only permit the court
to infer "the mere possibility of misconduct" do not show that
the pleader is entitled to relief. Id. at 1950.

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud
or mistake, a party must state with particularity the
circumstances constituting fraud or mistake." Rule 9(b) requires
that a party make particularized allegations of the circumstances
constituting fraud. See Sanford v. MemberWorks, Inc., 625 F.3d
550, 557-58 (9th Cir. 2010).

In order to sufficiently plead a fraud claim, the
plaintiffs "must allege the time, place, and content of the
fraudulent representation; conclusory allegations do not
suffice." Shroyer v. New Cingular Wireless Servs., Inc., 622
F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice,
intent, knowledge, and other conditions of a person's mind may be
alleged generally." Fed. R. Civ. P. 9(b); see also Odom v.
Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc)
("[T]he state of mind - or scienter - of the defendants may be

16

alleged generally." (citation omitted)); <u>Walling v. Beverly</u> <u>Enters.</u>, 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6)[.]" <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted. <u>Twombly</u>, 550 U.S. at 563 n.8 (citation omitted).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

**DISCUSSION**

## I.   <u>Count I - Haw. Rev. Stat. Chapter 480</u>

Section 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

First, to the extent Plaintiff's Haw. Rev. Stat. Chapter 480 UDAP claims are based on alleged TILA violations,

such claims are generally preempted.  This Court previously held
that,

> while TILA does not preempt § 480-2 claims in
> general, TILA does preempt UDAP claims that are
> based on alleged TILA violations.  Kajitani v.
> Downey Sav. & Loan Ass'n, F.A., 647 F. Supp. 2d
> 1208, 1220 (D. Hawai'i 2008). . . .  Thus, the
> portion of Plaintif's UDAP claim based on alleged
> TILA . . . violations fails to state a plausible
> UDAP claim, and Plaintiff cannot cure this defect
> through amendment.

Enriquez v. Countrywide Home Loans, FSB, CIV. 10-00405 LEK-RLP,
2011 WL 3861402, at *19 (D. Hawai'i Aug. 31, 2011).

Plaintiff's allegation that "Defendants' violations of
the Truth in Lending Act constitute unfair and deceptive acts or
practices in violation of H.R.S. Chapter 480[,]" fails to state a
claim.  [First Amended Complaint at ¶ 52.]  To the extent
Plaintiff alleges a UDAP claim based on the alleged failure to
provide TILA disclosure documents, such claims are preempted to
the extent they are based on alleged TILA violations.

Next, to the extent Plaintiff's UDAP claims are based
on Defendants' ultimate refusal to modify the loan, she does not
present any factual basis for the alleged promise to modify the
loan, or subsequent "bait and switch."  Plaintiff's arguments in
her memorandum in opposition regarding a promise of loan
modification are not supported by allegations in the First
Amended Complaint.  Plaintiff alleges only that "Defendants'
refusal to modify Plaintiff's loan is unfair and deceptive, and

is a separate violation of HRS § 480-2." [<u>Id.</u> at ¶ 55.] As alleged in the First Amended Complaint, however, the parties never entered into an agreement beyond the six-month Forbearance Agreement. The Forbearance Agreement itself is silent with respect to loan modification. [First Amended Complaint, Exh. G (12/14/10 Letter from IndyMac).] Further, she alleges only that "[w]hen the payments under the forbearance [were] complete, Defendants did not contact Plaintiff regarding a permanent loan modification nor regarding a continuing forbearance plan." [<u>Id.</u> at ¶ 45.] These allegations are insufficient, and Plaintiff fails to state a UDAP claim based on the refusal to modify her loan.

   With respect to her UDAP claim based on the alleged failure to follow HAMP guidelines, [<u>id.</u> at ¶ 56,] Plaintiff states that she does not argue that HAMP creates a private right of action, but that violations of HAMP regulations can be a deceptive and unfair practice under Chapter 480. This district court has ruled to the contrary with respect to UDAP claims, however, holding that "to the extent Plaintiff asserts that Defendants breached the HAMP guidelines, 'there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP.'" <u>Rey v. Countrywide Home Loans, Inc.</u>, Civil No. 11-00142 JMS/KSC, 2012 WL 253137, at *9 (D. Hawai‘i Jan. 26, 2012) (quoting <u>Dodd v. Fed. Home Loan Mortg. Corp.</u>, 2011

19

WL 6370032, at *12 (E.D. Cal. Dec. 19, 2011)).

To the extent Plaintiff argued in her memorandum in opposition and at the March 12, 2012 hearing that her UDAP claim is based on Defendants' alleged statements that there would be no foreclosure auction, while its attorneys were moving forward with the auction, and continued to threaten that a foreclosure sale would go through, she fails to include sufficiently specific allegations in her Count I UDAP claim. Further, to the extent this claim is based on an alleged violation of HAMP guidelines, it fails to state a UDAP claim, as discussed above.

In sum, Plaintiff's UDAP claim based on TILA violations is DISMISSED WITH PREJUDICE. With the exception of Plaintiff's UDAP claims that are preempted by TILA, the Court finds that it is arguably possible for Plaintiff to cure the defects in this claim by amendment. See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile."). The Motion is GRANTED IN PART AND DENIED IN PART as to Count I, and the non-TILA aspects of the claim are DISMISSED WITHOUT PREJUDICE.

## II. **Count II - Breach of Fiduciary Duty**

Plaintiff acknowledges that Defendants do not ordinarily owe a borrower a fiduciary duty, but she argues that here, Defendants changed the normal relationship by promising a

20

permanent modification.  As discussed above, however, the First

Amended Complaint does not sufficiently allege a promised loan

modification.  This district court has recognized that:

> Lenders generally owe no fiduciary duties to their
> borrowers.  See, e.g., Nymark v. Heart Fed. Sav. &
> Loan Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal. App.
> 1991) ("The relationship between a lending
> institution and its borrower-client is not
> fiduciary in nature."); Miller v. U.S. Bank of
> Wash., 865 P.2d 536, 543 (Wash. App. 1994) ("The
> general rule . . . is that a lender is not a
> fiduciary of its borrower."); Huntington Mortg.
> Co. v. DeBrota, 703 N.E.2d 160, 167 (Ind. App.
> 1998) ("A lender does not owe a fiduciary duty to
> a borrower absent some special circumstances.");
> Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153,
> 1161 (E.D. Cal. 2009) ("Absent 'special
> circumstances' a loan transaction 'is at
> arms-length and there is no fiduciary relationship
> between the borrower and lender.'") (quoting Oaks
> Mgmt. Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561
> (Cal. App. 2006)); Ellipso, Inc. v. Mann, 541 F.
> Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he
> relationship between a debtor and a creditor is
> ordinarily a contractual relationship . . . and is
> not fiduciary in nature.") (citation omitted).

McCarty v. GCP Mgmt., LLC, Civil No. 10-00133 JMS/KSC, 2010 WL

4812763, at *5 (D. Hawai`i Nov. 17, 2010).  The district court in

McCarty recognized that such a special relationship "might arise

where there is inequality of bargaining power."  Id. (citing

Miller, 865 P.2d at 543 ("A quasi-fiduciary relationship may

exist where the lender has superior knowledge and information,

the borrower lacks such knowledge or business experience, the

borrower relies on the lender' advice, and the lender knew the

borrower was relying on the advice.")).

Thus, Plaintiff can only state a claim if she can plead facts regarding an inequality of bargaining power that would constitute special circumstances beyond the traditional borrower-lender relationship. Although Plaintiff attempted to do so in Count II, the Court finds that the allegations of the First Amended Complaint are not sufficient to plead a fiduciary relationship between Plaintiff and Defendants. Count II therefore fails to allege a plausible claim for breach of fiduciary relationship. It is, however, arguably possible for Plaintiff to cure the defects in this claim by amendment. The Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count II, which is DISMISSED WITHOUT PREJUDICE.

## III. **Count III - Fraud and Misrepresentation**

Under Hawai'i law, the elements of a fraud claim are that: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (internal quotation marks and citations omitted). Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations. That is, the pleadings must state 'enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence of [the misconduct alleged].'" Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 566, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Plaintiff alleges that, beginning in July 2009, she sought a loan modification and "did everything requested by IndyMac in connection with her effort towards loan modification." [First Amended Complaint at ¶ 18.] IndyMac, however, in an October 18, 2010 letter "wrote to Plaintiff stating that her loan modification was denied because she failed to send in requested documentation." [Id. at ¶ 20.] Plaintiff claims that this "statement was false as Plaintiff had timely submitted all requested documentation." [Id. at ¶ 21.] Plaintiff's reliance on these misrepresentations is clear enough — Plaintiff continued to make her payments and seek a loan modification from IndyMac even though IndyMac was either proceeding with foreclosure or placing it in suspended status. Although the First Amended Complaint could have included more details describing these events, they are sufficient to provide the time, place, and nature of the alleged fraud with respect to misrepresentations regarding the receipt of documents in the loan modification process, and therefore, state this claim with sufficient particularity. The Motion is DENIED as to this portion of

Plaintiff's fraud claim.

With respect to her claims regarding a promised loan modification, however, Plaintiff's First Amended Complaint fails to offer sufficient details as to the time, place, or content of the allegedly fraudulent statements. There are no specific allegations that Defendants promised Plaintiff a loan modification at all, much less the specifics of the alleged misrepresentation. Further, Plaintiff's fraud claims with regard to a potential loan modification appear to based on future events or inferences of mere broken promises. As this Court has previously stated:

> [U]nder Hawai`i law, the false representation forming the basis of a fraud claim "must relate to a past or existing material fact and not the occurrence of a future event." <u>Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.</u>, 107 Hawai`i 423, 433, 114 P.3d 929, 939 (Ct. App. 2005) (citations and block quote format omitted) (emphasis in original). Further, even if the allegations satisfy the other elements of a fraud claim, "[f]raud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and **an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events**[.]" <u>Id.</u> (citations and block quote format omitted) (emphasis in original). The exception to this general rule is that "[a] **promise relating to future action or conduct** will be actionable, however, if the promise was made without the present intent to fulfill the promise." <u>Id.</u> (citations and block quote format omitted) (emphasis in <u>McElroy</u>).

<u>Doran v. Wells Fargo Bank</u>, CIV. NO. 11-00132 LEK-KSC, 2011 WL

2160643, at *12 (D. Haw. May 31, 2011).  In the present case,

Plaintiff's argument that Defendants somehow promised her that

she would qualify for loan modification, or even that Defendants

promised her that it would consider her application, cannot

support a plausible fraud claim unless Plaintiff can also allege

that, when Defendants made those promises, it never intended to

fulfill them.  Absent such a state of mind, the alleged

representations amount only to broken promises and not fraud.

The Motion is GRANTED with respect to this portion of Plaintiff's

fraud claim.

        Based on the foregoing, the Court finds that it is

arguably possible for Plaintiff to cure the defects in her fraud

claim.  The Court therefore GRANTS IN PART AND DENIES IN PART the

Motion as to Count III insofar as this Court DISMISSES portions

of Count III WITHOUT PREJUDICE.

## IV.  **Count IV - FDCPA**

        The FDCPA prohibits various collection practices by

"debt collectors" to, among other things, "eliminate abusive debt

collection practices."  <u>See</u> 15 U.S.C. § 1692(e) (describing the

purpose of the FDCPA).  The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of
> interstate commerce or the mails in any business
> the principal purpose of which is the collection
> of any debts, or who regularly collects or
> attempts to collect, directly or indirectly, debts
> owed or due or asserted to be owed or due another.
> Notwithstanding the exclusion provided by clause
> (F) of the last sentence of this paragraph, the

25

> term includes any creditor who, in the process of
> collecting his own debts, uses any name other than
> his own which would indicate that a third person
> is collecting or attempting to collect such debts.
> For the purpose of section 1692f(6) of this title,
> such term also includes any person who uses any
> instrumentality of interstate commerce or the
> mails in any business the principal purpose of
> which is the enforcement of security interests[.]

15 U.S.C. § 1692a(6). To be liable for a violation of the FDCPA,

the defendant must, as a threshold requirement, be a "debt

collector" within the meaning of the FDCPA. Heintz v. Jenkins,

514 U.S. 291, 294 (1995).

> The Court notes that,

> > original lenders, creditors, mortgage servicing
> > companies, and mortgage brokers generally do not
> > qualify as "debt collectors." See, e.g., Lyons v.
> > Bank of Am., NA, 2011 WL 3607608, at *12 (N.D.
> > Cal. Aug. 15, 2011) ("The FDCPA applies to those
> > who collect debts on behalf of another; it does
> > not encompass creditors who are collecting their
> > own past due accounts."); Radford v. Wells Fargo
> > Bank, 2011 WL 1833020, at *15 (D. Haw. May 13,
> > 2011) (collecting cases stating that original
> > lenders and mortgage servicing companies are not
> > "debt collectors"); Sakugawa v. IndyMac Bank,
> > F.S.B., 2010 WL 4909574, at *5 (D. Haw. Nov. 24,
> > 2010) (dismissing FDCPA claim because the mortgage
> > broker was not a "debt collector").

Long v. Deutsche Bank Nat. Trust Co., Civil No. 10-00359 JMS/KSC,

2011 WL 5079586, at *14 (D. Hawai'i Oct. 24, 2011); see also

Walker v. Equity 1 Lenders, No. 09cv325 WQH (AJB), 2010 WL

234942, at *5 (S.D. Cal. Jan. 12, 2010) (citing Perry v. Stewart

Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative

history of section 1692a(6) indicates conclusively that a debt

collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.")).

The First Amended Complaint states that Deutsche Bank is the present holder of the mortgage and note on the Property related to this transaction, and that OneWest/IndyMac is servicing the loan and collecting payments on behalf of Deutsche Bank. Plaintiff alleges that Defendants acquired the loan and servicing rights after the loan was already in default. The FDCPA claim, however, is so vaguely asserted that the Court cannot discern what debt collection efforts are the basis of this claim.

To the extent Plaintiff bases this claim on any attempt to collect on the Forbearance Agreement, Defendants note that, if the Forbearance Agreement was not in default, then the servicer is not trying to collect on a debt for FDCPA purposes, and is not required to comply with the terms of the FDCPA. Under 15 U.S.C. § 1692a(6)(F)(iii), the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." See also Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384, 387 (7th Cir. 1998) ("The plain language of § 1692a(6)(F) tells us that an individual

is not a 'debt collector' subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it.").

The Court finds that Plaintiff has not sufficiently identified a debt currently under collection. It is arguably possible, however, for Plaintiff to cure the defects in her FDCPA claim. The Court therefore GRANTS IN PART AND DENIES IN PART the Motion as to Count IV insofar as this Court DISMISSES Count IV WITHOUT PREJUDICE.

## V.    Count V - RESPA

RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]" 12 U.S.C. § 2605(e)(1)(A).

Pursuant to 12 U.S.C. § 2605(f)(1), Plaintiff has a burden to plead and demonstrate she has suffered damages.

> Because damages are a necessary element, failure to plead damages is fatal to a RESPA claim. See, e.g., Esoimeme v.. Wells Fargo Bank, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR"); Soriano v. Countrywide Home Loans, Inc., 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid

28

claim under RESPA"); <u>Shepherd v. Am. Home Mortg.
Servs.</u>, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20,
2009) ("[A]lleging a breach of RESPA duties alone
does not state a claim under RESPA.  Plaintiff
must, at a minimum, also allege that the breach
resulted in actual damages." (quoting <u>Hutchinson
v. Del. Sav. Bank FSB</u>, 410 F. Supp. 2d 374, 383
(D.N.J. 2006))).

<u>Long</u>, 2011 WL 5079586, at *3-4.

Plaintiff's Count V RESPA claim alleges only that
"Defendants have violated the requirements of [RESPA], in part,
by failing to provide Plaintiff with required information
pursuant to a valid qualified written request."  [First Amended
Complaint at ¶ 75.]  Although Plaintiff states generally that she
suffered actual damages in her prayer for relief, she does not
specify in the First Amended Complaint what her actual pecuniary
losses are with respect to her RESPA claim.  That is, Plaintiff
fails to explain how any RESPA violation involving Defendants'
alleged failure to respond to her QRW has caused her pecuniary
loss.  <u>See</u> <u>Long</u>, 2011 WL 5079586, at *4 (holding that the
plaintiff failed to allege necessary element of RESPA claim where
the complaint "fails to allege that Plaintiff suffered any actual
damages *as a result* of the alleged RESPA violations").

It is, however, arguably possible for Plaintiff to cure
the defects in this claim by amendment.  The Motion is therefore
GRANTED IN PART AND DENIED IN PART as to Count V, which is
DISMISSED WITHOUT PREJUDICE.

## VI. Count VI - TILA

### A. Damages

Plaintiff does not dispute that she failed to file her TILA damages claim within the one-year statute of limitations. Plaintiff, however, argues that she was prevented from learning of her TILA rights, thereby extending her time to file an action against Defendants.

"The doctrine of equitable tolling preserves otherwise time-barred TILA claims where the Plaintiff's failure to file a timely lawsuit is based on excusable ignorance." Cannon v. US Bank, Civ. No. 11-00079 HG-BMK, 2011 WL 1637415, at *5 (D. Hawai'i Apr. 29, 2011) (citing King v. California, 784 F.2d 910, 915 (9th Cir. 1986)). The Ninth Circuit in King stated:

> [T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule, the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

784 F.2d at 915. Where the basis of equitable tolling is fraudulent concealment, the basis for tolling must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *7 (D.

Hawai`i Jan. 21, 2011) (citing <u>389 Orange St. Partners v. Arnold</u>, 179 F.3d 656, 662 (9th Cir. 1999)).  Further, a plaintiff cannot merely rely on the same factual allegations that would establish the statutory violation to invoke equitable tolling.  <u>Hoilien v. Bank of Am.</u>, Civil No. 10-00760 JMS/BMK, 2011 WL 2518731, at *6 (D. Hawai`i June 23, 2011) (citing <u>Garcia v. Wachovia Mortg. Corp.</u>, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) ("[T]he mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations."); <u>Jacob v. Aurora Loan Servs.</u>, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) ("Plaintiff cannot rely on the same factual allegations to show that Defendants violated federal statutes and to toll the limitations periods that apply to those statutes.  Otherwise, equitable tolling would apply in every case where a plaintiff alleges violations of TILA . . . and the statutes of limitations would be meaningless.")).

In the present case, Plaintiff presents inadequate factual allegations to support her equitable tolling argument. She alleges only that "Defendants and the original lenders have prevented Plaintiff from timely learning of her TILA rights, and thus, have extended the time for bringing claims under TILA." [First Amended Complaint at ¶ 77.]  Plaintiff has therefore failed to make a plausible claim that equitable tolling saves her otherwise time-barred TILA damages claims.  It is, however,

arguably possible for her to cure the defects in her claims by amendment.  The Motion is therefore GRANTED IN PART AND DENIED IN PART as to the portion of Count VI asserting a TILA damages claim.  The claim is DISMISSED WITHOUT PREJUDICE.

**B.    Rescission**

To the extent Plaintiff alleges a TILA rescission claim, Defendants argue that she did not file within the applicable statute of limitations period.  Under 15 U.S.C. § 1635(a), borrowers have a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  The rescission right, however, "is extended up to three years '[i]f the required notice or material disclosures are not delivered.'"  Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 789 (9th Cir. Dec. 29, 2011) (quoting 12 C.F.R. § 226.23(a)(3)).  In such a situation, the right expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).

Plaintiff asserts that she timely attempted to rescind in a March 23, 2010 letter to IndyMac.  [First Amended Complaint ¶ 19; Exh. D (3/23/10 Letter to IndyMac).]  The March 23, 2010

letter, however, makes no mention of rescission; rather, it is entitled "Hardship Letter," is addressed to the "Loan Modification Officer," and seeks only a loan modification. It states, in part:

> It is my sincere desire to work with Indymac to stay in my home; I sincerely hope that a loan modification will be approved by Indymac as soon as possible as I truly want to begin making my monthly mortgage payments as soon as possible. I have been advised by Indymac that I am unable to make any payments unless there is a modification or some other legal action taken. I truly want to settle this matter as quickly as possible.

[Id., Exh. D at 2.]

The March 23, 2010 letter does not sufficiently place Defendants on notice of Plaintiff's intent to rescind. 12 C.F.R. § 226.23(a)(2) requires that Plaintiff provide actual notice through written communication to Defendants. See also 15 U.S.C. § 1635(a) (borrower may rescind "by notifying the creditor, in accordance with regulations of the Board, of his intention to do so"); Zakarian v. Option One Mortg. Corp., 642 F. Supp. 2d 1206, 1213 (D. Hawai'i 2009) ("Furthermore, the Ninth Circuit has made clear that an obligor who wishes to cancel a loan must provide actual notice within the three year limitation period to the actual holder of the loan when the notice is given."); Gamiao v. Bank of Am., CV. No. 10-00311 DAE KSC, 2011 WL 839757, at *4 (D. Hawai'i Mar. 4, 2011) (dismissing TILA rescission claim where action was filed within three years of the loan consummation, but

33

Defendants were not served until after three years); <u>Mitchell v.</u>
<u>Bank of Am.</u>, Civil No. 10cv432 L(WVG), 2011 WL 334988, at *2
(S.D. Cal. Jan. 31, 2011) ("The language of Regulation Z is
clear: in order to rescind a loan, actual notice of the
rescission must be given to the creditor and it may not be
presumed."). Accordingly, the First Amended Complaint fails to
include sufficient facts to establish the timeliness of
Plaintiff's TILA rescission claim. Further, a TILA rescission
claim is an absolute statute of repose and not subject to
equitable tolling.

It is, however, arguably possible for Plaintiff to cure
the defects in her claim by amendment. The Court DISMISSES
WITHOUT PREJUDICE Plaintiff's TILA rescission claim with leave to
amend to assert, if possible, that Plaintiff timely notified
Defendants that she was invoking her right to rescind pursuant to
TILA. The Motion is therefore GRANTED IN PART AND DENIED IN PART
as to the portion of Count VI asserting a rescission claim under
TILA.

## VII. <u>Count VII - Negligence</u>

To prevail on a negligence claim, a plaintiff
must demonstrate:

(1) A duty, or obligation, recognized by the
law, requiring the defendant to conform to a
certain standard of conduct, for the
protection of others against unreasonable
risks;

(2) A failure on the defendant's part to

34

conform to the standard required: a breach of
the duty;

(3) A reasonably close causal connection
between the conduct and the resulting injury;
and

(4) Actual loss or damage resulting to the
interests of another.

Takayama v. Kaiser Found. Hosp., 82 Hawaiʻi 486,
498-99, 923 P.2d 903, 915-16 (1996); see also
Kahoʻohanohano v. Depʼt of Human Servs., 117
Hawaiʻi 262, 287 n.31, 178 P.3d 538, 563 n.31
(2008) (listing elements for negligence as "(1)
duty; (2) breach of duty; (3) causation; and (4)
damages"); Cho v. Hawaii, 115 Hawaiʻi 373, 379
n.11, 168 P.3d 17, 23 n.11 (2007) (same).

Pagano v. OneWest Bank, F.S.B., CV. No. 11-00192 DAE-RLP, 2012 WL
74034, at *4 (D. Hawaiʻi Jan. 10, 2012).

Courts generally hold that lenders do not owe
their borrowers a duty of care sounding in
negligence. McCarty v. GCP Mgmt., LLC, 2010 WL
4812763, at *6 (D. Haw. Nov. 17, 2010) (citing
Champlaie v. BAC Home Loans Servicing, LP, 706 F.
Supp. 2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a
matter of law, [a] lender [does] not owe a duty in
negligence not to place borrowers in a loan even
where there was a foreseeable risk borrowers would
be unable to repay.") (some citations omitted)).

Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1122-23 (D. Hawaiʻi
2011).

The First Amended Complaint alleges that "Defendants

owed Plaintiff a duty not to make false representations and

Defendants were negligent in making the above described

representations." [First Amended Complaint at ¶ 82.] She

further alleges that, "Defendants undertook the activity of

processing Plaintiff's request for modification and thus owed
Plaintiff a duty of ordinary care in carrying out that activity."
[Id. at ¶ 82.]  It is not clear here that Defendants exceeded the
scope of their conventional role as a lender.  Even though the
present case involves Plaintiff's unsuccessful attempts to secure
loan modification and not the origination of the loans, it
appears that Plaintiff only dealt with Defendants in a borrower
and lender capacity.  See, e.g., Doran v. Wells Fargo Bank, Civil
No. 11-00132 LEK-BMK, 2011 WL 2160643, at *16 (D. Hawai'i May 31,
2011) (finding that plaintiffs did not allege that defendant owed
them a duty of care sounding in negligence in a claim involving
unsuccessful loan modification where plaintiffs only dealt with
defendant in a borrower and lender capacity).

        Even assuming, however, that Plaintiff established some
sort of duty on the part of Defendants, Plaintiff has not
sufficiently demonstrated the element of causation.
Specifically, Plaintiff fails to show how the alleged breach of
such duty caused her any damage.  For example, to the extent that
Plaintiff alleges that any breaches of a duty thwarted her
ability to modify her loans, Plaintiff has not alleged any facts
that she was entitled to a modification.

        The Court finds that the First Amended Complaint fails
to state a claim for negligence.  It is, however, arguably
possible for Plaintiff to cure the defects in her claim by

amendment.  The Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count VII, which is DISMISSED WITHOUT PREJUDICE.

**VIII.     <u>Count VIII - Breach of Contract</u>**

The First Amended Complaint alleges that Plaintiff and Defendants "had two separate agreements that Defendants would suspend any attempts to foreclose upon Plaintiff's property." [First Amended Complaint at ¶ 88.]  Although Count VIII does not specify what those two agreements are, Plaintiff argues in her briefing that Defendants promised her that she would get a loan modification if she complied with the Forbearance Agreement; then Defendants refused modification and began foreclosure proceedings.  First, the First Amended Complaint does not sufficiently allege that Defendants promised Plaintiff that she would get a loan modification and the Forbearance Agreement does not promise a loan modification.

Second, it is not clear how Defendants otherwise breached the Forbearance Agreement.  <u>See</u> <u>Otani v. State Farm Fire</u> <u>& Cas. Co.</u>, 927 F. Supp. 1330, 1335 (D. Hawaiʻi 1996) ("In breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient.").  The Forbearance Agreement states that IndyMac "will suspend collections foreclosure upon receipt of the signed agreement and the first payment." [First Amended Complaint, Exh. G (12/14/11

37

Forbearance Agreement), at 1.] It further states that, "[a]t the
end of your forbearance period the loan will revert back to the
original terms in effect prior to the forbearance unless the
forbearance is extended, or the loan is modified." [Id.] At
present, Defendants have not foreclosed on the Property, and it
is unclear how they otherwise breached the Forbearance Agreement.
To the extent the forbearance period has ended, any attempt to
foreclose does not appear to breach the agreement. In response
to the Motion, Plaintiff has pointed to no additional <u>contractual</u>
source of her breach of contract claim. That is, there are no
allegations that Defendants have foreclosed upon the Property or
otherwise breached an identified contract between the parties.

       The Court finds that the First Amended Complaint fails
to adequately state a claim for breach of contract. It is,
however, arguably possible for Plaintiff to cure the defects in
her claim by amendment. The Motion is therefore GRANTED IN PART
AND DENIED IN PART as to Count VIII, which is DISMISSED WITHOUT
PREJUDICE.

**IX.  <u>Count IX - Good Faith and Fair Dealing</u>**

       Plaintiff alleges that each contract implies a duty of
good faith and fair dealing and that "Defendants violated their
duty of good faith and fair dealing." [Id. at ¶ 93.]

       This district court has characterized similar claims as
attempts to allege claims for the tort of bad faith. <u>See, e.g.,</u>

<u>Phillips</u>, 2011 WL 240813, at \*5 (citing <u>Best Place v. Penn Am.</u>

<u>Ins. Co.</u>, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting

tort of bad faith for breach of implied covenant of good faith

and fair dealing in an insurance contract)).  Although bad faith

is an accepted tort when a plaintiff is a party to an insurance

contract, the tort has not been recognized in Hawaiʻi based on a

mortgage loan contract.

> "In <u>Best Place</u>, the Hawaii Supreme Court
> noted that although Hawaii law imposes a duty of
> good faith and fair dealing in all contracts,
> whether a breach of this duty will give rise to a
> bad faith tort cause of action depends on the
> duties inherent in a particular type of contract."
> <u>Jou v. Nat'l Interstate Ins. Co. of Haw.</u>, 114 Haw.
> 122, 129, 157 P.3d 561, 568 (Haw. App. 2007)
> (citing <u>Best Place</u>, 82 Haw. at 129, 920 P.2d at
> 334).  "The court concluded that special
> characteristics distinguished insurance contracts
> from other contracts and justified the recognition
> of a bad faith tort cause of action for the
> insured in the context of first- and third-party
> insurance contracts." <u>Id.</u> (citing <u>Best Place</u>, 82
> Haw. at 131-32, 920 P.2d at 345-46).  Indeed, "the
> Hawaii Supreme Court emphasized that the tort of
> bad faith, as adopted in <u>Best Place</u>, requires a
> contractual relationship between an insurer and an
> insured." <u>Id.</u> (citing <u>Simmons v. Puu</u>, 105 Haw.
> 112, 120, 94 P.3d 667, 675 (2004)).

> Moreover, although commercial contracts for
> "sale of goods" also contain an obligation of good
> faith in their performance and enforcement, this
> obligation does not create an independent cause of
> action.  <u>See</u> <u>Stoebner Motors, Inc. v. Automobili</u>
> <u>Lamborghini S.P.A.</u>, 459 F. Supp. 2d 1028, 1037-38
> (D. Haw. 2006).  And Hawaii courts have noted that
> "[o]ther jurisdictions recognizing the tort of bad
> faith . . . limit such claims to the insurance
> context or situations involving special
> relationships characterized by elements of
> fiduciary responsibility, public interest, and

adhesion." <u>Id.</u> at 1037 (quoting <u>Francis v. Lee
Enters.</u>, 89 Haw. 234, 238, 971 P.2d 707, 711
(1999)).  It is thus unlikely that Plaintiffs
could recover for bad faith as alleged in Count
III.

> . . . .

> And, even if Plaintiffs are attempting to
assert bad faith in the performance of a
contractual right to foreclose, "a court should
not conclude that a foreclosure conducted in
accordance with the terms of a deed of trust
constitutes a breach of the implied covenant of
good faith and fair dealing." <u>Davenport v. Litton
Loan Servicing, LP</u>, 725 F. Supp. 2d 862, 884 (N.D.
Cal. 2010) (citation omitted).  "The covenant [of
good faith] does not 'impose any affirmative duty
of moderation in the enforcement of legal
rights.'" <u>Id.</u> (quoting <u>Price v. Wells Fargo Bank</u>,
213 Cal. App. 3d 465, 479–80, 261 Cal. Rptr. 735,
742 (1989)).

<u>Id.</u> at *5-6 (alterations in original).

As discussed above, the First Amended Complaint does

not sufficiently allege any "special relationship characterized

by elements of fiduciary responsibility, public interest, and

adhesion," therefore, the Court finds that Plaintiff has failed

to state a claim for bad faith.  Further, to the extent there is

no identified contract underlying the claim for bad faith, as

discussed above, Plaintiff cannot state a claim for the tort of

bad faith.

The Court finds that the First Amended Complaint fails

to adequately state a claim for bad faith.  It is, however,

arguably possible for Plaintiff to cure the defects in her claim

by amendment.  The Motion is therefore GRANTED IN PART AND DENIED

IN PART as to Count IX, which is DISMISSED WITHOUT PREJUDICE.

**X.   Count X - Promissory Estoppel**

The First Amended Complaint alleges that Defendants promised that they "would suspend foreclosure proceedings," [First Amended Complaint at ¶ 96,] and "broke those promises by continuing to set the foreclosure sale." [Id. at ¶ 98.] Plaintiff argues she properly alleged that she relied on those promises to her detriment, was justified in her reliance, and thereafter suffered damages.

The Hawai`i Supreme Court has stated that:

> [T]he four elements of promissory estoppel are:
>    (1) There must be a promise;
>    (2) The promisor must, at the time he or she
>        made the promise, foresee that the
>        promisee would rely upon the promise
>        (foreseeability);
>    (3) The promisee does in fact rely upon the
>        promisor's promise; and
>    (4) Enforcement of the promise is necessary
>        to avoid injustice.
>
> In re Herrick, 82 Hawai`i [329,] 337-38, 922 P.2d
> [942,] 950-51 [(1996)] (quoting 4 R. Lord, A
> Treatise on the Law of Contracts by Samuel
> Williston § 8:5, at 85-95 (4th ed. 1992)).  The
> "essence" of promissory estoppel is "detrimental
> reliance on a promise."  Ravelo [v. County of
> Hawai`i], 66 Haw. [194,] 199, 658 P.2d [883,] 887
> [(1983)].
>
> This court has defined a "promise" for
> purposes of promissory estoppel to be "a
> manifestation of intention to act or refrain from
> acting in a specified way, so made as to justify a
> promisee in understanding that a commitment has
> been made."  In re Herrick, 82 Hawai`i at 338, 922
> P.2d at 951 (quoting Restatement (Second) of
> Contracts § 2(1)) (internal quotation marks

41

omitted).  More specifically, a "promisor
manifests an intention" if he or she "believes or
has reason to believe that the promisee will infer
that intention from his [or her] words or
conduct."  Id. (quoting Restatement (Second) of
Contracts § 2(1) comment b) (internal quotation
marks omitted).  In Ravelo, a couple detrimentally
relied on the County Police Department's letter
stating that the husband had been accepted as a
police recruit.  This court held that the County
"could have anticipated the assurance of
employment at a definite time would induce a
reaction of that nature [i.e., couple quitting
jobs on the island of Oahu and preparing to move
to the island of Hawai`i]."  Ravelo, 66 Haw. at
199, 658 P.2d at 887.

Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Hawai`i 149,

164-65, 58 P.3d 1196, 1211-12 (2002) (footnote omitted).

        The Court finds that the First Amended Complaint

sufficiently alleges facts that – if proven – would support a

plausible claim of promissory estoppel.  The Motion is therefore

DENIED as to Count X.

**XI.  <u>Leave to Amend</u>**

        The Court has granted the Motion to dismiss several of

the above-mentioned claims WITHOUT PREJUDICE.  Plaintiff is

granted until **April 23, 2012** to file a Second Amended Complaint

in order to cure the deficiencies noted in this Order.  The Court

CAUTIONS Plaintiff that, if she fails to timely file a Second

Amended Complaint, the claims which this Court has dismissed

without prejudice will be automatically dismissed with prejudice.

Further, if the Second Amended Complaint fails to address the

defects identified in this Order, the Court may dismiss such

claims with prejudice.

The Court emphasizes that Plaintiff is not granted leave to add new parties, claims or theories of liability. If Plaintiff wishes to add new parties, claims or theories of liability, Plaintiff must either obtain a stipulation from all parties or move for leave to amend according to the deadlines in the Rule 16 Scheduling Order. The magistrate judge will rule upon such a motion in the normal course. The Court CAUTIONS Plaintiff that, if she includes new parties, claims or theories of liability in the Second Amended Complaint without obtaining either a stipulation or an order from the magistrate judge granting leave to amend, the new parties, claims, or theories of liability may be dismissed with prejudice.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss First Amended Complaint, filed December 9, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to the UDAP claims based on TILA violations in Count I; these claims are DISMISSED WITH PREJUDICE. The Motion is GRANTED IN PART with respect to Counts I (non-TILA UDAP claims), II, portions of III, IV, V, VI, VII, VIII, and IX; these claims are DISMISSED WITHOUT PREJUDICE and Plaintiff is GRANTED leave to amend them. The Motion is DENIED as to Count X and portions of

Count III.  Plaintiff is GRANTED leave to file a Second Amended

Complaint as set forth in this Order by **April 23, 2012**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 23, 2012.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CHERIE DIANE TEDDER V. DEUTSCHE BANK NATIONAL TRUST COMPANY, ETC., ET AL; CIVIL NO. 11-00083 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**